BRADLEY, Judge.
Former wife appeals from an order of the Circuit Court of Mobile County which decreed that no arrearages of alimony and child support payments were owed by the ex-husband and that the ex-husband shall pay to the ex-wife as alimony the sum of $90 per month. We affirm.
The parties to this appeal were divorced in January 1966 after eighteen years of marriage. Although the original divorce decree was not made a part of the record in this appeal, the parties stipulated that the decree provided that “the Respondent [Richard Fuller] will pay to the Complainant [Hilda Fuller] two hundred dollars per month as alimony and support.”
On January 31, 1978 Mrs. Fuller filed a “motion” in the circuit court seeking inter alia to have Mr. Fuller adjudged in contempt of court for his failure to pay the full monthly amounts required by the divorce decree. The parties stipulated at the hearing that the arrearage of these payments, if in fact such arrearage was owed, totaled about $8,000. The husband’s answer denied that he was in arrears and also contained a “cross-motion” asking the court to eliminate the alimony and support payments required by the divorce decree on the grounds that the parties’ two minor children had reached the age of majority and were no longer dependents.
The trial court held a hearing at which the following facts were revealed. The parties’ two children, who were minors at the time of the divorce decree, are now adults. The son, Rick, reached the age of majority in June 1970 and is now approximately twenty-nine years old. The daughter, Gail, reached the age of majority in June 1972 and is now about twenty-seven years old. Both children are now attending college at the expense of Mrs. Fuller’s aunt.
At the time of the hearing Mrs. Fuller, then fifty-eight years old, was working at an attorney’s office as a secretary and office manager, making approximately $1,000 per month. She testified that she also had been operating a business called the “Soap Shop” for over a year. Despite the fact that this business suffered a loss of $3,600 during the previous year, Mrs. Fuller stated that she had notified her employer of her intention to leave her job as secretary in order to operate the Soap Shop. She further testified that the attendant pressures of her job at the law office contributed to her recent medical problems; that her aunt and her mother would provide her temporary financial support as she made the adjustment from her secretarial job to operating the shop; and that she hoped her business would “break even” during 1978 and show a profit the following year.
Mr. Fuller, now in his late fifties, testified that he had ceased to be a civil service employee the month before the hearing, when health problems forced him into early retirement. His gross annual salary had increased from $13,000 at the time of the divorce in 1966 to about $25,000 in 1977. After the divorce he had moved to California, had remarried in 1968, and is now supporting his present wife and her children. His retirement income and YA disability pension will give him an estimated annual income of $14,000. He and his present wife have about $10,000 equity in a home, own two motor vehicles, and have about $4,500 *32 in bank accounts. In the last ten years they have taken several trips outside the continental United States and at least one cross-country motor trip in this country.
The record indicates that from the time of the divorce in 1966 through October 1969 Mr. Fuller paid the full $200 per month alimony and child support as required by the divorce decree. However, during the next fifty months, i. e. from November 1969 through December 1973, Mr. Fuller made monthly payments which varied in amount from $140 to $180. Specifically, he paid $140 per month for nineteen and one-half of these months, $180 per month for twenty-nine and one-half of these months, and $160 for one of these months. Thereafter, from January 1974 through the time of the hearing he paid $80 per month.
Mrs. Fuller testified that she acquiesced to the payments because she needed the money and was afraid that if she “caused any trouble he would stop them altogether.” In January 1978 she received a letter from Mr. Fuller wherein he advised her that the payments would stop in May of that year. At that point she decided to institute the contempt proceedings.
Mr. Fuller contended in his testimony that Mrs. Fuller agreed to these reduced payments, insofar as she never objected when he notified her that the amount of the payments was going to be lowered. He also indicated that certain factors influenced his decision as to what amount he would send each month; namely, whether either of the children was in school, whether either of the children had reached twenty-one years of age, and whether Mrs. Fuller requested a little more money than she had received the previous month. He testified that in 1974 he finally reduced the payments to $80 per month because both children were out of school, over twenty-one, and working; and that he is now unable to continue making payments to his ex-wife.
In addition to making the above mentioned payments, the record indicates that Mr. Fuller also maintains hospitalization and burial insurance policies on Mrs. Fuller and the two children. Mrs. Fuller is the beneficiary of a life insurance policy maintained by Mr. Fuller, and the son, Rick, is the contingent beneficiary. On one occasion Mr. Fuller sent Rick $500 to pay for a car repair. The record also indicates that for a time Rick lived with Mr. Fuller in Sacramento, California while attending school there, but it is unclear whether this occurred prior to Rick’s reaching the age of majority.
Following this hearing the trial court issued an order dated June 14, 1978 finding no arrearage owed by Mr. Fuller and ordering him to make future alimony payments to Mrs. Fuller in the amount of $90 per month.
The wife contends on appeal that the trial court erred in ruling there was no arrearage and abused its discretion in reducing the amount of alimony. She argues that the trial court retrospectively modified the divorce decree in contravention of the rule set forth in Whitt v. Whitt, 276 Ala. 685, 166 So.2d 413 (1964). She cites Whitt for the proposition that while changed circumstances may be grounds for modification of a divorce decree requiring the husband to pay alimony, such a modification has only a prospective effect and cannot relieve the husband of paying alimony installments which matured prior to the petition for modification. She also cites numerous Alabama cases holding that accrued installments of alimony become final judgments as of the date due and may be collected as other judgments.
On the other hand, the husband’s position is that the trial court properly found no arrearage. He points out that the original divorce decree required the husband to pay a monthly lump sum as alimony and child support, and that the two children born of the marriage had reached the age of majority in 1970 and 1972 respectively. The ultimate issue to be decided, he argues, is not whether the past-due installments are to be considered non-modifiable final judgments, but rather, whether such “judgments” may be considered partially paid and satisfied by way of credits applied against the arrear-age. The husband contends that in the *33 instant case, as in Nabors v. Nabors, Ala. Civ.App., 354 So.2d 277 (1978), the trial court allowed as credits against the claimed arrearage that portion of the monthly payment which represented child support accruing subsequent to the respective dates on which the children were emancipated.
The husband also contends the trial court did not “reduce the alimony,” but rather merely stated which part of the original lump-sum award was in fact alimony. He points out that this court upheld a similar action by the trial court in McGugin v. McGugin, Ala.Civ.App., 357 So.2d 347 (1978).
The two cases cited by the husband, Na-bors, supra and McGugin, supra, involved lump-sum awards of alimony and child support similar to that in the instant case. In these cases this court noted that a father owes no further support obligation to a child who reaches the age of majority, Na-bors, supra, or to a child who marries and becomes self-supporting, McGugin, supra. See also 15A Ala.Dig. Parent and Child &wkey;3.1(4). In Nabors and McGugin we also recognized the authority of the trial court to allocate proportionate amounts of a lump-sum award as alimony and child support in an appropriate proceeding subsequent to the original divorce decree.
The divorce decree in Nabors ordered the husband to pay $25 per week as alimony and child support. In giving credit to the husband against arrearages claimed by the wife, the trial court made a proportional allocation of the $25 per week lump-sum award, finding the wife was entitled to one-third of the award as alimony with the other two-thirds for support of the minor children. The credit given to the husband was based on the fact that the minor children had lived with and were supported by the husband for a part of the period of time during which the arrearages were alleged to have accrued.
Similarly, in McGugin, supra, the 1970 divorce decree required the husband to pay $40 per week as alimony and child support. In 1977 the wife sought to have the husband adjudged in arrears on these payments. After a hearing the trial court determined that the original award should be allocated as follows: $20 per week as child support and $20 per week as alimony. The court then reduced the amount of the claimed arrearage by permitting the husband to receive credit for the sum designated as child support for the period during which the child was no longer dependent upon the husband for support. The credit given to the husband was based on the fact •that the child had married and that thereafter the wife was not entitled to any child support payments.
The case at bar differs from Nabors and McGugin in one respect. The court order from which Mrs. Fuller appeals contains no express allocation of the original monthly lump-sum award, i. e. it does not specify what portion of the award represents alimony and what portion represents child support for the two children, nor does it specify what portion represents the monthly support for one child. Relevant portions of that order read as follows:
[T]he Court having considered all testimony adduced at the time of the hearing and the evidence submitted, the Court now finds that the two minor children were emancipated in June of 1970 and June of 1972, and therefore, it is ORDERED, ADJUDGED and DECREED by the Court that the records in the Office of the Accounts Clerk of this Court shall be adjusted to reflect no arrearage in this cause.
It is further ORDERED, ADJUDGED and DECREED by the Court that all child support payments be, and hereby are, now suspended in that the minor children were emancipated in June of 1970 and June of 1972, and further, that the Defendant shall pay to the Plaintiff as alimony the sum of $90.00 per month,
. . [Emphasis supplied.]
Thus the precise question posed by this appeal is whether the trial court, having failed to make an express allocation of the original lump-sum award, erred in allowing the husband as credit against the claimed arrearage that amount of the child support *34 payments accruing subsequent to the children’s respective emancipation dates.
The Alabama Supreme Court said in White v. White, Ala., 350 So.2d 326 (1977):
It is a well-known rule of review that where the trial court makes a decision based upon evidence taken ore tenus, its decree is favored with a presumption of correctness and its finding will not be disturbed on appeal unless plainly erroneous or manifestly unjust.

This court has stated that where there is no direct finding by the trial court on a matter but the decree rendered necessitated such a finding, the reviewing court will presume such a finding if it is supported by the evidence and justifies the decree rendered. [Citations omitted.]
In this case the trial court’s conclusion that there was no arrearage necessitated a finding as to the allocation of the lump-sum award in order to determine the amount of credit due the husband based on the earlier emancipation of the children. It is unclear from the record exactly what allocation was made by the trial court. Consequently, the monthly and/or total amount of credit allowed to the husband is also uncertain. It is clear, however, that the credit given was sufficient to eliminate the entire amount (roughly $8,000) of the claimed arrearage.
The trial court ordered that the husband make future alimony payments in the amount of $90 per month. Assuming that the trial court’s implicit but unstated finding was that the $200 per month payments were allocated as $90 per month alimony and $110 per month child support ($55 per child per month), the credit given the husband based on this allocation would justify the trial court’s conclusion that no arrear-age is owed. A finding of such an implicit allocation is supported by the evidence in the record of this case, and under the authority of White, supra, and the cases cited therein, this court will presume such allocations were made by the trial court in resolving the issue of arrearage.
A trial court may, in a final divorce decree, specify what part of a monetary award to the wife is alimony and what part is for child support, and although a failure to do so is not improper or error, see Boyd v. Boyd, 268 Ala. 409, 108 So.2d 176 (1959), the granting of such lump-sum awards is not recommended. Nabors, supra. Similarly, this opinion should not be construed as recommending the granting of credits to the husband against arrearages of alimony and child support in the absence of an express allocation of the original lump-sum award of alimony and child support.
We think the record supports the trial court’s decision to set the amount of future alimony payments at $90 per month and we would further point out that the law in this state is that awards of periodic alimony which have not accrued are never truly final, but are subject to the power of the court to modify on account of changed circumstances. See, e. g., Jernigan v. Jernigan, Ala.Civ.App., 335 So.2d 178 (1976).
The modification of a decree providing for alimony and child support upon proof of changed circumstances is a matter within the discretion of the trial court which is disturbed on appeal only upon a showing of palpable abuse. Clutts v. Clutts, 54 Ala.App. 43, 304 So.2d 599 (1974). Under the facts of this case we cannot say the trial court abused its discretion. This case is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.